# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: OCTOBER 29, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000284-MR

DATE 11-19-15 ЕлАCrουΝΡ-ς

MICHAEL JOHN ROBERT　　　　　　　　　　　　　　APPELLANT

ON APPEAL FROM DAVIESS CIRCUIT COURT
V.　　　　　　HONORABLE JAMES A. WETHINGTON, II, JUDGE
NO. 13-CR-00235

COMMONWEALTH OF KENTUCKY　　　　　　　　　　APPELLEE

## MEMORANDUM OPINION OF THE COURT

## REVERSING AND REMANDING

A Daviess Circuit Court jury found Appellant, Michael J. Robert, guilty of first-degree sexual abuse, second-degree rape, third-degree rape, and two counts of third-degree sodomy. The jury recommended that Appellant be sentenced to thirty years' imprisonment, but, pursuant to KRS 532.080(6)(b), the trial court imposed the maximum sentence of twenty years' imprisonment. Appellant now appeals as a matter of right, Ky. Const. § 110(2)(b), and raises the following allegations of error: (1) the trial court erred in failing to excuse a biased juror and/or declare a mistrial in violation of Appellant's right to a fair and impartial jury, (2) the trial court allowed improper KRE 404(b) evidence to be admitted at trial in violation of Appellant's rights under the Sixth and Fourteenth Amendments to the U.S. Constitution, and (3) the trial court denied Appellant due process of the law under the Fourteenth Amendment to the U.S.

Constitution by the introduction of two photographs of the victim taken at the time the alleged crimes occurred.

## I. BACKGROUND

More than two decades ago, Appellant lived just one street over from a young girl named Jane.[1] Jane was admittedly unhappy with her home life and, at age eleven, she began regularly visiting the home of Appellant and his then-wife, Beth. Jane liked to visit their home to play with their dogs and soon developed a relationship with both Appellant and Beth.

Approximately twenty years after the alleged acts of abuse began, Jane contacted the police and reported that Appellant had molested her for approximately five years, beginning when she was eleven years old. As a result of the subsequent police investigation, Appellant was charged with and indicted for one count of first-degree sexual abuse, two counts of second-degree rape, and two counts of third-degree sodomy.

Jane alleged that Appellant sexually touched her hundreds of times while she visited his home during that five-year period. However, Appellant denied that anything inappropriate ever occurred between him and Jane. Beth testified that she was almost always around when Jane would visit and that she never saw any inappropriate touching or contact between Jane and Appellant during the time period in question. Appellant further stated that Jane had attempted to contact him in an effort to let their children play

---

[1] The name of the alleged victim has been changed to Jane for the purpose of this opinion in an attempt to protect her privacy.

together, and that she only made her allegations against him when he did not respond to her attempts at contact; Appellant claims this is the reason Jane went to the police with false allegations.

Appellant was ultimately convicted of four of the five crimes he was charged with and sentenced to the maximum of twenty years' imprisonment. Further facts will be developed as necessary for our analysis.

## II. ANALYSIS

### A. Juror Qualification

Appellant's first argument is that the trial court erred in failing to strike a biased juror or subsequently declare a mistrial when that juror sat on the panel. Because we agree that this was a biased juror, we hold the trial court violated Appellant's right to an impartial jury. Therefore, we reverse and remand to the trial court for a new trial.

During voir dire, the trial court became aware that one of the prospective jurors, Juror M, had a current back injury she was struggling with. Based on the trial judge's willingness to accommodate Juror M by allowing her to stand when necessary, she stated that she believed she could serve if selected. Both Juror M and another juror, Juror B, were selected to serve on the jury in Appellant's trial.

The jury was sworn, opening statements were given by each side, and the trial judge took a recess for lunch. It was during this recess that Juror B spotted a spectator in the courtroom whom she recognized from her church. According to Jane's sister, upon greeting her, Juror B asked her, "Oh my gosh,

is that [(the victim)] your sister?" To which the spectator replied by nodding her head and saying, "Yes." Juror B immediately exclaimed, "Oh my God, I have got to get off of this case!" Subsequently, Juror B approached the bailiff stating that she needed to speak with the judge because she had a conflict.

In chambers, the prosecutor relayed to the trial judge the details of this conversation between Juror B and Jane's sister. Juror B was brought back into chambers where she spoke with the judge in front of the attorneys. Juror B stated that as she was leaving the courtroom she recognized this spectator from her church and that she just wanted to make the judge aware she attends church with Jane's sister and parents and does know this family. When asked by the judge if this would make a difference in her ability to serve as a juror in this case, Juror B replied that it would not as she had sworn to be impartial. When the judge prompted Juror B for more information regarding this conversation, Juror B replied that she and Jane's sister had merely made eye contact and said "hi" because they recognized each other.

After Juror B was dismissed from the trial judge's chambers, the prosecutor told the trial judge that Juror B gave a markedly different account of this incident than did Jane's sister. At this time, the defense attorney moved to strike Juror B. The trial judge asked the prosecutor for a response and he agreed that either Juror B should be stricken or all parties should agree to keep her and agree that she would be the alternate. Defense counsel agreed and the trial judge then stated "let's agree that she's going to be stricken . . . as the alternate."

The trial proceeded and, on Friday morning, the prosecution rested its case. The trial judge called for a recess and the jurors filed out into the hallway. While in the hallway, Juror M (the juror with a prior back injury) slipped and fell, badly injuring herself. She was immediately transported to the hospital. In hopes that she would be able to return after the weekend, the court called a recess until Monday morning. Unfortunately, Juror M was unable to return for jury duty. The trial court chose to proceed with the trial, moving Juror B from the alternate spot and onto the panel. The defense moved for a mistrial on the ground that Juror B was a biased juror and her service on this jury would violate Appellant's constitutional right to an impartial jury. The trial judge denied the motion for a mistrial and Juror B sat in judgment of Appellant.

The Sixth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution guarantee a criminal defendant the right to trial by an impartial jury. The Kentucky Rules of Criminal Procedure provide that "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." RCr 9.36. Challenges for impartiality must be made before the jury is sworn, but a juror may be challenged after the jury is impaneled if the court finds good cause. RCr 9.36(1), (3).

"A trial court's decision whether to remove a juror from a panel that has already been seated is reviewed for an abuse of discretion." *Lester v. Commonwealth*, 132 S.W. 3d 857 (Ky. 2004). A trial court abuses its discretion

5

when this decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire and Rubber Co. v. Thompson, Ky.*, 11 S.W., 575, 581 (Ky. 2000). In making this determination, the trial court is charged with weighing "the probability of bias or prejudice based on the entirety of a juror's responses and demeanor." *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007). This includes ascertaining the credibility of the prospective juror's answers. *Id.* at 338. "And, 'notwithstanding a prospective juror's responses . . . whatever his or her protestations of lack of bias, the juror's close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses, is sufficient to require the court to sustain a challenge for cause and excuse the juror.'" *Jackson v. Commonwealth*, 392 S.W.3d 907 (Ky. 2013) (citing *Brown v. Commonwealth*, 313 S.W.3d 577, 596 (Ky. 2010) (quoting *Marsch v. Commonwealth*, 743 S.W.2d 830, 833 (Ky. 1988)).

Here, the juror's statements regarding this conversation were at odds with Jane's sister's recollection of the incident. The juror was untruthful when explaining the details of the conversation and gave an entirely different account to the judge than her initial reaction (as recounted by Jane's sister) when realizing she knew this family. The trial judge was aware of all these facts at the time he questioned Juror B in chambers and at the time he made his ruling on both the motion to strike and motion for mistrial. "[A] juror may indicate that he or she can be impartial, but they may demonstrate a state of mind to disprove that statement by subsequent comments or demeanor so substantially at odds that it is obvious the [trial court] has abused [its]

6

discretion in deciding the juror is unbiased; in contrast, an individual may flatly and blatantly demonstrate his inability to be impartial and fair, and no magic question can rehabilitate his impartial state of mind." *McDaniel v. Commonwealth*, 341 S.W.3d 89 (Ky. 2011) (citing *Shane v. Commonwealth*, 243 S.W.3d 336 (Ky. 2007)). In this instance, the juror's initial reaction indicated that she could not be fair and needed to be released from her duty on this jury. Her subsequent comments and demeanor toward the judge do not rectify this showing of apparent bias. There can be no magic questions to rehabilitate a juror and this juror's apparently untruthful response to the judge's questions regarding the conversation she had with Jane's sister certainly does not serve to rehabilitate her as a juror.

At the very least, Juror's B's remarkably different response about her ability to be fair and impartial and the account of her conversation with Jane's sister were enough to cast serious doubt on her qualifications as a juror in this case. This Court has long held, "[a]ny doubts about the ability of a juror to be fair and impartial should be construed in favor of a defendant." *Paulley v. Commonwealth*, 323 S.W.3d 715, 721 (Ky. 2010). The trial judge's decision (and the parties' agreement) to designate this juror as the alternate is evidence that there was doubt surrounding the qualifications of this juror.

Criminal Rule 9.32 provides that a juror may be designated as the alternate either by agreement between the parties or by random selection. However, this juror was not removed as an alternate under either of the provided methods in Criminal Rule 9.32. In the case *sub judice* the trial judge

7

effectively determined the juror would be excused by designation as the alternate. This is the very situation contemplated by this Court in *Nunley v. Commonwealth*, 393 S.W.3d 9 (Ky. 2013). In *Nunley*, this Court stated:

> The rule (Criminal Rule 9.32), however, recognizes that it sometimes "become[s] necessary to excuse a juror" other than by agreement or random selection. Though the rule is not explicit, this must refer to excusing a juror for cause during the trial once it becomes evident that the juror is not qualified to sit. Though this practice is often referred to as designating the juror as the alternate, that is not what it is; otherwise, such a juror could be subject to recall if another member of the jury became unable to sit. *See* RCr 9.32(2). Instead, what technically happens when the juror is disqualified, even in the middle of the trial, is that he is struck for cause. This is what the trial judge did in this case.

*Id.* at 14.

Thus, when the doubt surrounding the qualification of this juror caused the trial judge to designate this juror as the alternate, she was effectively stricken for cause. Therefore, when Juror M later became disqualified by physical injury, it was error for the trial court to cause Juror B to sit in judgment of Appellant as a previously disqualified juror. For this reason, we reverse the trial court and remand for a new trial. Having already found grounds to reverse Appellant's conviction and remand for a new trial, we will only look at Appellant's remaining arguments insofar as they are likely to recur on remand.

## B. KRE 404(b) Evidence

Next, Appellant argues the trial court committed reversible error when it admitted KRE 404(b) evidence of other crimes, wrongs, or acts. Pursuant to KRE 404(c), the Commonwealth notified Appellant of its intention to introduce

8

evidence at trial that Appellant had engaged in sexual acts with Jane on numerous occasions—more instances than those for which Appellant had been charged. This evidence included additional acts of sexual touching during the time span covered by the indictment and, also, at least one incident after that time period. Because we believe this issue is likely to recur on remand, we reach the merits.

Kentucky Rules of Evidence 404 deals with character evidence and evidence of other crimes. More specifically, KRE 404(b) provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
>> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>>
>> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

In *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994), this Court stated "trial courts must apply the rule cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." However, this Court has ruled on numerous occasions that "similar acts perpetrated against the same victim are almost always admissible" to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Price v. Commonwealth*, 31 S.W.3d 885, 888 n. 4 (2000).

9

Jane testified that Appellant first groped her breasts in 1994—an act charged under Appellant's indictment. She also testified that Appellant had done so several other times (these times uncharged) leading up to the first time he raped her in 1997. In all, she said Appellant touched her sexually "hundreds" of times. She testified that Appellant placed his mouth on her vagina around ten times and placed his penis inside her mouth no more than three times. The touching continued until Jane had a boyfriend at age 16.

Just as in the case at bar, in *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002), the victim testified that the appellant "had sexually abused her 'more than one time'" and the appellant in that case argued that this amounted to a violation of KRE 404(b). However, this Court held that "this testimony falls within the exceptions for evidence offered to prove intent, plan, or absence of mistake or accident." *Id.* We reiterated that "evidence of similar acts perpetrated against the same victim [is] almost always admissible for those reasons." *Citing Price,* 31 S.W.3d at 888 n. 4.

In yet another similar case in which the victim was permitted to testify regarding uncharged acts of sexual contact, *Harp v. Commonwealth*, 266 S.W.3d 813, 822-23 (Ky. 2008), we held:

> The Commonwealth bore the burden of proving each element of each charge against [the appellant] beyond a reasonable doubt. Thus, the Commonwealth was required to offer proof of [the appellant's] intent. Accordingly, the evidence of other sexual contact between [the appellant and the victim] . . . was both highly relevant and probative. Additionally, the evidence [the appellant] challenges on appeal also was admissible as proof of at least identity and absence of mistake or accident.

As we have definitively held, "evidence of similar acts perpetrated against the same victim are almost always admissible . . . ." [*Price*, 31 S.W.3d at 888, n.4.] And we do not perceive that any prejudice suffered by [the appellant] was sufficient to overcome the general rule regarding admissibility of similar acts perpetrated against the same victim. Thus, we find no error in the trial court's decision to admit the KRE 404(b) evidence in question.

Here, Appellant denied any of the allegations. Therefore, his intent, motive, plan, absence of mistake, and course of conduct were all squarely at issue, just as in the cases cited above. The Commonwealth's theory of the case was that Appellant was obsessed with Jane and started abusing her when she was eleven years old. According to Jane, Appellant told her he was the only person who would love her and that he wanted the two to live together when she turned eighteen. The ongoing sexual contact, including testimony that such contact persisted even after she reached the age of consent, was both relevant and probative in this case, just as similar evidence was relevant and probative in *Harp*. The trial court did not abuse its discretion here in allowing the evidence under KRE 404(b), and assuming the Commonwealth gives proper notice pursuant to KRE 404(c) on retrial, such evidence should be allowed in Appellant's new trial for the limited purposes of proving Appellant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" or "if [it is] so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." KRE 404(b).

11

## C. Photographs of the Victim

Lastly, Appellant argues that he was denied due process of the law based on the introduction of photographs of Jane at the time of the alleged crimes. Two photographs of Jane were introduced; one depicts her at age eleven and the other at age fourteen. Again, we reach the merits of this argument due to its likelihood to recur on remand.

"In order to be admissible, a photograph must be relevant, and its prejudicial effect must not substantially outweigh its probative value." *Chesnut v. Commonwealth*, 250 S.W.3d 288, 302 (Ky. 2008). We review a trial court's evidentiary rulings for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

The photographs of Jane are relevant due to the fact that at the time of the first alleged instance of sexual abuse, Jane was eleven years old and at the time of trial Jane was approximately thirty years old. Just as one is entitled to use photographs of a deceased victim to show him or her as a living person, an alleged victim of sexual abuse may use photographs of himself or herself at the time of the alleged incident to provide an accurate depiction at the relevant age. *Rogers v. Commonwealth*, 60 S.W.3d 555, 560 (Ky. 2001). Often, sexual crimes are not reported or prosecuted until later in time, when the victim's appearance

12

may have markedly changed since the time of the alleged crime. Thus, these photographs were relevant for that purpose.

Furthermore, the photographs of Jane were not unduly prejudicial. Unlike the objectionable photographs shown in *Hughes v. Commonwealth*, 445 S.W.3d 556 (Ky. 2014)—where the jury was shown pictures of the victim just after childbirth, in a hospital bed—the pictures shown here did not portray the victim in a light which would evoke undue sympathy or mislead the jury in any way. Appellant does not contend that Jane looks like anything other than a normal eleven-year-old and fourteen-year-old girl in these photographs. Nor does Appellant contend that the actions portrayed in these photographs would evoke undue prejudice. Thus, Appellant contends that he is unduly prejudiced by publication to the jury of photographs which he admits accurately portray his alleged victim in a fair light at the time of the alleged incidents. While Appellant may indeed be prejudiced by these photographs, their accuracy and fairness prevent this prejudice from being undue. As a result, we hold that Appellant was not denied due process of law based on the admission of the two subject photographs.

### III. CONCLUSION

For the foregoing reasons, we reverse Appellant's convictions and corresponding sentences and remand for a new trial in accordance with this opinion.

13

All sitting. Minton, C.J., Abramson, Barber, Cunningham, and Keller, JJ., concur. Noble, J., concurs in result only by separate opinion in which Venters, J., joins.

NOBLE, J., CONCURRING IN RESULT: While I agree with the majority's resolution of the juror issue and its result in this case, I write separately to respectfully express my disagreement with the majority's perpetuation of what has seemingly become a hard-and-fast rule that "evidence of similar [sex] acts perpetrated against the same victim are [sic] almost always admissible" to prove intent, plan, or absence of mistake or accident, or some "other purpose" under KRE 404(b)(1). *Noel v. Commonwealth*, 76 S.W.3d 923, 931 (Ky. 2002). It is clear that our case law has effectively abandoned the requirement that other-bad-acts evidence be offered for some purpose other than showing the defendant's criminal disposition simply because the evidence offered is of other sexual acts involving the same victim, and I disagree with rubberstamping this judicial carve-out of KRE 404(b)'s prohibition against such evidence.

Unlike their federal counterparts,[2] the Kentucky Rules of Evidence contain no exception to KRE 404(b) for evidence of other sex acts. Yet, particularly since it made its conclusory pronouncement in *Noel*, the tendency of this Court has been to treat the Rules of Evidence as having just such an exception, at least in cases of other-sex-crimes evidence involving the same

---

[2] *See* Fed. R. Evid. 413 (authorizing use of other sexual assaults in prosecution for sexual assault), Fed. R. Evid. 414 (authorizing use of other child molestations in prosecution for child molestation).

victim. *See, e.g., Lopez v. Commonwealth,* 459 S.W.3d 867, 875 (Ky. 2015) (holding testimony about prior sexual conduct between defendant and victim admissible under KRE 404(b)(1) simply because it "f[ell] squarely within the parameters set forth in *Noel*"); *Harp v. Commonwealth,* 266 S.W.3d 813, 822–23 (Ky. 2008) (holding, based on the Court's "definitive[]" holding in *Noel,* that "any prejudice suffered by [the defendant] was [in]sufficient to overcome the general rule regarding admissibility of similar acts perpetrated against the same victim").

While I admit my own culpability in silently joining the summary disposition of these issues in cases such as *Lopez* and *Hart,* I now believe it is time for this Court to right the ship. We must buck this trend and reassert the exclusionary thrust of Rule 404(b)'s prohibition against admitting propensity evidence.

In this case, Robert was charged with only five discrete crimes: first-degree sexual abuse for the first time he illegally touched Jane in 1994, second-degree (or third-degree) rape for having sexual intercourse with Jane on a jet ski in 1997 (or 1998), second-degree (or third-degree) rape for having sexual intercourse with Jane on a waterbed in 1997 (or 1998), third-degree sodomy for having deviate sexual intercourse with Jane (her mouth, his penis) when she was less than sixteen years old, and third-degree sodomy for having deviate sexual intercourse with Jane (his mouth, her vagina) when she was less than sixteen years old. But, in addition to the charged offenses, the trial court allowed evidence of additional uncharged sexual acts involving Jane to also be

15

admitted. This included testimony of illegal touching between Robert and Jane "hundreds of times" following the first (charged) touching; that Jane had performed oral sex on Robert one or two other times before she turned sixteen; that Robert had performed oral sex on Jane around nine other times before she turned sixteen; that Robert had taken Jane driving on country roads when she was sixteen and had touched her all over and under her clothes, including her vagina, while she was driving; and that when Jane visited Robert at his apartment a few years after the time period of the indictment, he pushed her onto his couch and began touching her but stopped when she told him she was pregnant by another man.

In overruling Robert's pretrial objection, the trial court summarily found that this evidence "is relevant and is offered to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and is so inextricably intertwined with other evidence essential to the case that separation of the two can not [sic] be accomplished without serious adverse effect on the Commonwealth." Therein lies the problem. Because our case law permits such perfunctory treatment of KRE 404(b) evidence in sex cases, trial courts are emboldened to admit pure propensity evidence of other sexual acts by the accused without performing the analysis required for all other other-bad-acts evidence—that is, whether it actually is being offered for some other permissible, relevant purpose and whether its probative value is nevertheless outweighed by its prejudicial effect, *Bell v. Commonwealth*, 875 S.W.2d 882, 890 (Ky. 1994). Not only does the

majority sign off on the trial court having done so in this case, but it prospectively directs that the same be done on remand. *Ante* at ____ ("[S]uch evidence should be allowed in Appellant's new trial for the limited purposes of proving Appellant's 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,' or 'if [it is] so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.'" (quoting KRE 404(b))).

The primary mistake, one that has been repeated time and again in our more recent cases, is it fails to identify how it is, exactly, that the uncharged-crimes evidence actually serves to prove any of the "limited purposes" it lists from KRE 404(b)(1), or even whether those other uses were even relevant in this case. It is no answer to merely list examples of such other purposes without more. Indeed, this prevalent practice renders the prohibition against propensity evidence largely illusory in sex-abuse cases.

Here, as in most, if not all, other cases that have mechanically applied the *Noel* "rule," the majority signs off on the purported use of the uncharged-crimes evidence to prove "intent." But how do the other alleged sexual acts by Robert prove that he intended to commit the charged acts? Perhaps more importantly, why was it necessary, when he denied committing the crimes at all, that the Commonwealth affirmatively prove that he intended to commit the acts he is charged with committing? He either did them or he did not.

Robert's intent was wholly irrelevant at trial. Intent is not an element of statutory rape and similar sexual-assault offenses where the victim is underage and that age is the basis for the lack of consent. *Davis v. Commonwealth*, 561 S.W.2d 91, 94 (Ky. 1978). Of course, the law requires that the defendant have acted voluntarily. KRS 501.030(1). Thus, Robert could not have been convicted of the first sodomy charge (her mouth, his penis) if he had actually been asleep when Jane performed oral sex on him. Thus, even though he had participated in an act that would ordinarily give rise to absolute liability, he would not be guilty of a crime because he did not act voluntarily. But here, none of the allegations in any way placed Robert's voluntariness in dispute. While the burden is on the prosecution to prove all the elements of the charged offense beyond a reasonable doubt, Robert's alleged actions spoke for themselves in terms of their voluntariness. And that he may have committed the same or similar acts on other occasions in no way showed the voluntariness of his conduct in the charged instances.

This is important because very little distinguishes the inferential logic of using other-crimes evidence to prove intent or voluntariness (he intended to commit the other crimes, so it is likely he intended to commit the charged crime) from the prohibited inference drawn from using such evidence to prove general propensity (because he committed the other crimes, he is the type of person who commits such crimes, so it is likely he committed this crime too). *See* Robert G. Lawson, *Kentucky Evidence Law Handbook*, § 2.30[4][c], at 150 (5th ed. 2013). It is for this reason that, historically at least, this Court has

recognized the increased potential intent poses for abuse of the "other purposes" exception and has, therefore, insisted on heightened precautions when using other-crimes evidence to show intent. As Professor Lawson has explained, "[a]buse is most likely to occur when the need for the evidence is ignored or overlooked or when the evidence is admitted without careful analysis of its relevance to prove intent." *Id.* (footnotes omitted).

Despite *Noel*'s conclusory holding (and the misguided progeny it has spawned), "evidence of other crimes should be admitted to prove intent *only when intent is in genuine dispute* ... [, and] even when in dispute, a trial court must still determine that the evidence is relevant to prove the intent to commit the crime charged." *Walker v. Commonwealth*, 52 S.W.3d 533, 535–36 (Ky. 2001) (emphasis added); *see also* 1 Mueller & Kirkpatrick, *Federal Evidence*, § 112 (2nd ed. 1994) ("[C]ourts are wise ... to exclude the [other-crimes] evidence ... where such proof is not necessary because intent is readily inferred from the act itself ... or because there is no dispute on intent."). There is no reason to treat attempts to use other-crimes evidence to show intent any differently simply because the other crime involved the same victim as the crime charged.

The same is true of another commonly listed purpose for introducing other-crimes evidence involving the same victim cited by the majority: "absence of mistake or accident." Where is the mistake here, the absence of which the evidence of Robert's other sexual acts with Jane was purportedly used to prove? Evidence of other crimes can be admitted as proof of absence of mistake

19

or accident only if mistake or accident is actually in genuine dispute. For instance, if Robert had admitted to touching Jane's breast but claimed that it had been an accident and that he had not meant to touch her there, then evidence of the uncharged touchings would be admissible to prove absence of accident for the charged touching. Because that was not the case here, the other-crimes evidence cannot have been introduced for that purpose and, therefore, can obviously not have been admissible for that purpose.

"Mistake" (or "knowledge") could have been at issue if Robert had defended that he did not know the age of his victim. *See* KRS 510.030 (creating defense to statutory rape if the defendant did not know the victim was underage). But that was not at issue in this case.

"Motive," too, is an inappropriate ground for admitting the uncharged-crimes evidence in this case. What do the other sexual acts prove about Robert's motive for committing the charged crimes? At most, they show a motive of achieving sexual gratification from activities involving a minor, specifically Jane. From this, it follows that because his motive for committing the other crimes was to satisfy his sexual desires for a minor (Jane), he probably had the same motive for committing the charged crimes. But this is nothing more than bootstrapping prohibited general-propensity evidence into motive. It does nothing more than allow the jury to conclude that since Robert committed all these uncharged sexual acts, he is the sort of person who commits such sexual acts and, thus, probably committed the charged sexual acts too. This is exactly what KRE 404 is intended to protect against. To again

20

borrow a quote from Professor Lawson, "[i]f protection against propensity evidence is to be meaningful, courts must limit the use of the 'motive' exception to situations where motive is pertinent to the issues of the case and where the other crimes evidence shows a motive to commit the charged offense and not just some offense." Lawson, *supra*, § 2.30[4][e], at 155.

Nor was the evidence of other sexual conduct between Robert and Jane admissible as proof of "plan" or "preparation." What plan? The evidence proved, at most, that Robert had a general, undefined "plan" to achieve sexual gratification through his exploits with Jane. But just like intent and motive, the invocation of this "other purpose" to admit the other-crimes evidence here is all smoke and mirrors. Use of other-crimes evidence to prove "plan" or "preparation" (formerly, "common scheme") is admissible only when there is an actual plan involving commission of both the uncharged and charged crimes and when evidence of the plan, in particular, proves the commission of the charged crime in some specific way, rather than merely showing a propensity to commit the crime. *See id.* at § 2.30[4][g], at 160. Here, the other-crimes evidence proved nothing beyond a propensity to commit the charged sex crimes.

Similarly, the majority has not shown, nor can it, how the uncharged-crimes evidence here would be admissible to prove "opportunity" or "identity" under KRE 404(b)(1). How do the other acts prove his opportunity to commit the charged acts? How do they prove the identity of the perpetrator? Again, he either did the charged acts, or he did not. The questions whether he had an

21

opportunity to commit them, or whether he in fact was the one that committed them, are subsumed in the allegations themselves.

Finally, the majority last would allow the other-sex-acts evidence to be admitted under KRE 404(b)(2) as being "inextricably intertwined" to the charged crimes. That is, that the majority believes proof of all the sexual activities is needed to show the entire, ongoing course of sexual conduct. I disagree. The fact that Robert allegedly continued touching Jane hundreds of times after the first charged touching in 1994, or that he performed oral sex on Jane nine times in addition to the one instance for which he was charged, or that he had Jane perform oral sex on him one or two times in addition to the one for which he was charged, are all *completely irrelevant* to whether he actually committed the charged offenses. Their only relevance is to serve the prohibited purpose of allowing the jury to infer that since the defendant did all this other sexual stuff with the victim, he must have also done the sexual stuff for which he was actually charged. If the Commonwealth truly needed Robert's entire alleged "course of conduct" to be considered by the jury, then it should have charged him with all the crimes he allegedly committed during that course of conduct.

In sum, the uncharged-crimes evidence here served little purpose other than to inform the jury that Robert was a bad person, i.e., that he was the type of person who engages in sexual activities with a minor. It clearly violates KRE 404(b)'s prohibition against other-bad-acts evidence to show action in conformity therewith and is not properly admissible for any other purpose

22

under KRE 404(b)(1) or (2). By applying the unsound, summary holdings in *Noel* and its progeny, the majority erroneously concludes that the evidence of Robert's other sexual conduct with Jane is admissible. Because I believe that it is time for this Court to gather up the apples that spilled when *Noel* upset the cart, I do not concur with Part II.B of the majority opinion.

Venters, J., joins.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer, Assistant Public Defender

COUNSEL FOR APPELLEE:

Jack Conway, Attorney General of Kentucky
James Coleman Shackelford, Assistant Attorney General