Michael Anthony PRICE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 1998–SC–0760–MR.

Supreme Court of Kentucky.

Nov. 22, 2000.

A.B. Chandler, III, Attorney General, Frankfort, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee.

COOPER, Justice.

On the night of October 31, 1996, Appellant Michael Anthony Price shot and killed his wife, Carol Price, then sexually assaulted his eleven-year-old stepdaughter, L.B. A Hart County Grand Jury subsequently returned this indictment, 96–CR–00056, charging Appellant with murder and rape in the first degree. By a separate indictment, 96–CR–00057, Appellant was charged with seven additional counts of rape in the first degree allegedly perpetrated against L.B.

At the trial of this indictment, Appellant claimed that he shot his wife by accident; and though he did sexually abuse L.B., he did not have sexual intercourse with her, thus did not commit the offense of rape in the first degree. KRS 510.040. Rejecting his version of the shooting, but accepting his version of the sexual assault, the jury found Appellant guilty of the murder of Carol Price and of the attempted first-degree rape of L.B. He was sentenced to life in prison for murder and to twenty years for attempted first-degree rape, each sentence to run concurrently with the other. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), and asserts five claims of error: (1) the rape and murder charges should have been severed for purposes of trial; (2) his tape recorded confession should have been suppressed; (3) his assertion of his constitutional right to counsel should have been deleted from his confession; (4) L.B. should have been declared incompetent to testify; and (5) he should not have been excluded from the courtroom during L.B.'s testimony.

Steven R. Romines, Romines, Weis & Young, Louisville, for appellant.

## I. SEVERANCE.

Criminal Rule 6.18 provides:

Two (2) or more offenses may be charged in the same complaint or two (2) or more offenses whether felonies or misdemeanors, or both, may be charged in the same indictment or information in a separate count for each offense, if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan.

Criminal Rule 9.16 provides:

If it appears that a defendant or the Commonwealth is or will be prejudiced by a ... joinder for trial, the court shall order separate trials of counts ... or provide whatever other relief justice requires....

The trial judge denied Appellant's motion for severance, finding that the rape and murder charges were "so closely intertwined that they cannot be severed." Appellant complains that the denial of his motion to sever allowed the jury to consider evidence of his prior sexual assaults of L.B. while deliberating his guilt or innocence of the unrelated murder of his wife.

 Although Appellant did not deny sexually assaulting L.B. on the night of October 31, 1996, he did deny any intent to have sexual intercourse with her. Such intent is the element which elevates sexual abuse in the first degree,[1] a Class D felony, to criminal attempt to commit first-degree rape,[2] a Class B felony.[3] Thus, the evidence of Appellant's prior sexual assaults of L.B. was admissible to prove intent, as well as motive and plan with respect to the charge of first-degree rape.[4] The admission of this evidence may well have prejudiced Appellant's ability to defend against the murder charge; but the real issue is whether he was *unduly* prejudiced, *i.e.,* whether the prejudice to him was unnecessary and unreasonable. *Romans v. Commonwealth,* Ky., 547 S.W.2d 128, 131 (1977). Upon reviewing the evidence and considering the parties' respective theories concerning the murder charge we conclude that Appellant's prior and subsequent sexual assaults of L.B. were, indeed, inextricably connected to the death of Carol Price.

L.B. was born on November 30, 1984. Her mother married Appellant in 1990. Soon thereafter, Appellant developed what he, himself, characterized as an uncontrollable sexual obsession with L.B. He admitted sexually assaulting her on four different occasions, the first occurring in September 1991 and the last on October 21, 1996; however, he denied ever having sexual intercourse with her. (L.B. testified that the sexual assaults occurred almost weekly over a five-year period and frequently included sexual intercourse.) After the October 21, 1996 incident, L.B. informed her mother of the sexual assaults and, upon being confronted, Appellant admitted his guilt. The three proceeded together to the local Department for Social Services (DSS) office to "get help." One of the DSS social workers thought Appellant was suicidal, so arrangements were made to admit him to the Bowling Green Medical Center for inpatient treatment of depression.

Appellant was discharged from the hospital on October 28, 1996, at which time he learned that the DSS workers had reported his sexual offenses to law enforcement authorities. He then learned that he could

---

1. KRS 510.110.

2. KRS 510.040; KRS 506.020(1).

3. KRS 506.010(4).

4. KRE 404(b)(1); *Roberson v. Commonwealth,* Ky., 913 S.W.2d 310, 315–16 (1994); *Messmear v. Commonwealth,* Ky., 472 S.W.2d 682, 684 (1971) ("evidence of other sex activities of the same nature committed with and upon the same person is competent"); *Keeton v. Commonwealth,* Ky., 459 S.W.2d 612 (1970); see generally R. Lawson, *The Kentucky Evidence Law Handbook* § 2.25, at 105–06 (3d ed. Michie 1993) for a discussion of the admissibility of evidence of other sexual crimes if perpetrated against the same victim as opposed to a different victim.

not return to his home and family; that if his wife allowed him to return, she would lose custody of L.B.; and that if arrested, he would be terminated from his employment. On October 29th, Kentucky State Police Detective Steve Fitts contacted Appellant and requested that he come to his office for an interview. Appellant agreed to meet with Fitts at 1:00 p.m. on October 30th. However, instead of keeping that appointment, Appellant proceeded by bicycle to a shed located behind his residence. He took with him three handguns, a Colt .45, a Ruger .22, and a Taurus 9-mm.

Appellant hid in the shed from about noon on October 30th until about 10:30 p.m. on October 31st, observing the activities of his wife and stepdaughter and occasionally sneaking into the house for food. He wrote a suicide note in which he blamed his predicament on the social workers who had reported his crimes to the police. At approximately 10:30 p.m. on October 31st, Appellant, armed with the Colt .45 and the Ruger .22, entered the living room of his home. He testified that he intended to commit suicide (though he never explained why he needed two firearms to kill only himself). Carol Price was asleep on the sofa. Appellant testified that he knelt down beside her, placed the Ruger .22 to his temple, and cocked it; whereupon Carol suddenly awoke and grabbed his arm, which caused the weapon to fire and accidentally discharge a bullet into her left temple. Appellant then entered the adjacent bedroom where L.B. was sleeping. Appellant awakened L.B., told her that he had tied up her mother in the living room, and that he would kill her (Carol) if L.B. did not have sex with him. He forced L.B. to the floor, removed her clothing and his, then physically assaulted and sexually abused her. He claims that he then "woke up" and allowed L.B. to leave the house and go to a nearby residence to call the police.

Thus, Appellant's theory of the case was that he was so depressed over the consequences of his prior sexual abuse of L.B.

that he was attempting to kill himself when he accidentally shot and killed his wife. The Commonwealth's theory was that Appellant was so sexually obsessed with L.B. that he killed his wife intentionally to get rid of her. Either way, the evidence of Appellant's prior and subsequent sexual abuse of L.B. was so inextricably connected with the issues concerning his motive and intent to kill his wife that the evidence would have been admissible even in a separate trial for murder. KRE 404(b)(1) and (2). That is a significant factor in determining whether severance is required. *Spencer v. Commonwealth*, Ky., 554 S.W.2d 355 (1977); *cf. Rearick v. Commonwealth*, Ky., 858 S.W.2d 185 (1993). Since the same evidence would have been admissible at separate trials, Appellant was not unduly prejudiced by the denial of his motion to sever the rape and murder charges. *Schambon v. Commonwealth*, Ky., 821 S.W.2d 804, 808–09 (1991).

## II. CONFESSION: VOLUNTARINESS.

When the police arrived at his residence, Appellant placed the barrel of the Colt .45 against his head as if intending to take his own life. He did not pull the trigger. He was then placed under arrest, handcuffed by an officer of the Horse Cave Police Department, and transported to the Hart County Sheriff's office where he was interrogated by Detective Fitts and Detective Jeff Scruggs of the Kentucky State Police. After being read his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Appellant admitted that he shot his wife (but omitted to claim it was by accident). He also admitted that he sexually assaulted L.B. and that he had been sexually abusing her for five years, but denied having sexual intercourse with her. He then invoked his right to counsel, whereupon the interrogation ceased. The entire interview was recorded on an audio tape. The first five minutes of the tape consists only of the futile efforts of the detectives to remove

the handcuffs from Appellant's wrists and Appellant's occasional utterance of expressions of pain as they were doing so.

Appellant asserts that his confession should have been suppressed because the "totality of [the] circumstances" indicates that it was involuntary. *Mills v. Commonwealth*, Ky., 996 S.W.2d 473, 481 (1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000). As factual support for this assertion, he cites his suicidal mental state and the physical pain caused by the handcuffs. He makes no claim of any abuse, threats or intimidation perpetrated against him by the detectives. The trial judge held an in-chambers hearing at which Appellant was present but did not testify. After listening to the tape recording of the confession, the trial judge found that it had been voluntarily given.

"[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment," *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986); and although a defendant's mental condition is a significant factor to consider in determining voluntariness, "this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' " *Id.* at 164, 107 S.Ct. at 520. While the audio tape indicates that Appellant endured some pain while the detectives were manipulating his arms and wrists in their attempts to remove the handcuffs, there is no indication that he was enduring any pain during the actual interrogation. More significantly, Appellant never claimed that his confession was induced by pain caused merely by being handcuffed. Excluding the five minutes consumed by the detectives' efforts to remove the handcuffs and the one minute consumed in advising Appellant of his *Miranda* rights, the entire interrogation lasted less than eight minutes. Absent any

indication of coercion by the detectives or complaints of pain by Appellant, the trial court's finding that the confession was voluntarily given is supported by substantial evidence and, thus, is conclusive. RCr 9 .78; *Springer v. Commonwealth*, Ky., 998 S.W.2d 439, 446 (1999).

### III. CONFESSION: INVOCATION OF RIGHT TO COUNSEL.

The interrogation concluded as follows:

Appellant: Could I have a court appointed lawyer? I don't have no money.

Scruggs: You can have one appointed for you, yeah.

Appellant: I need a lawyer.

Scruggs: You need a lawyer?

Appellant: I don't have no money.

Scruggs: Okay. Well, we are going to stop talking to you now since you asked for a lawyer, okay? The time is 0400 hours and it's on the 1st day of November, 1996, and our interview took place at the Hart County Sheriff's Office in Munfordville, Kentucky, and I am Detective Jeff Scruggs and Detective Steve Fitts sitting here and your name is Mike Price, right?

Appellant: Right.

Scruggs: Okay. That ends the interview.

The Commonwealth played the tape recording of the interrogation for the jury. It had been agreed that the tape would be stopped at a point just prior to Appellant's request for counsel and, indeed, the tape was stopped at that point. However, when court and counsel realized that each juror had been furnished with a typed transcript of the interrogation from which the colloquy in question had not been deleted, it was agreed to play the remainder of the tape to its conclusion.

Appellant asserts that it was prejudicial error to inform the jury that he had invoked his right to counsel. While it is held more often than not to be prejudicial error to inform a jury that, upon arrest, a defendant invoked his right to remain si-

lent, *Miranda v. Arizona, supra,* at 468 n. 37, 86 S.Ct. at 1624–25 n. 37, *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), *Romans v. Commonwealth, supra,* at 130, the same conclusion is not required with respect to a defendant's invocation of his right to counsel. *E.g., Blankenship v. Commonwealth,* Ky. App., 740 S.W.2d 164, 167 (1987). The prejudice from informing a jury of a defendant's assertion of his right to remain silent arises from the implication that the defendant refused to talk to the police because of a consciousness of his own guilt, *i.e.,* an innocent person would profess innocence. However, even an innocent person is likely to want to consult an attorney if accused of a crime which he did not commit. Thus, the issue is more susceptible to harmless error analysis than is a comment on silence. RCr 9.24; *e.g., Bentley v. Scully,* 41 F.3d 818 (2d Cir.1994), *cert. denied,* 516 U.S. 1152, 116 S.Ct. 1029, 134 L.Ed.2d 107 (1996); *United States v. Matthews,* 20 F.3d 538, 551–52 (2d Cir.1994).

■ Here, Appellant never refused to talk to the police. The detectives discontinued the interrogation, and the jury was not informed that they were *required* to do so because Appellant had invoked his right to counsel, per *Miranda, supra,* at 444–45, 473–74, 86 S.Ct. at 1612, 1627–28. But most importantly, by the time Appellant invoked his right to counsel, he had already admitted that he had shot his wife and sexually assaulted his stepdaughter. Thus, any inference of guilt which might have arisen from his invocation of his right to counsel was harmless beyond a reasonable doubt.

## IV. COMPETENCY OF WITNESS.

KRE 601(b) states:

Minimal qualifications. A person is disqualified to testify as a witness if the trial court determines that he:

(1) Lacked the capacity to perceive accurately the matters about which he proposes to testify;

(2) Lacks the capacity to recollect facts;

(3) Lacks the capacity to express himself so as to be understood, either directly or through an interpreter; or

(4) Lacks the capacity to understand the obligation of a witness to tell the truth.

Appellant claims that L.B. was incompetent to testify against him because inconsistencies in her testimony with respect to, *e.g.,* the number of times she was assaulted by Appellant, whether penetration occurred, and the time frame in which the sexual assaults occurred, proved that she was unable to accurately recollect the facts. However, the Commentary to KRE 601 explains:

This provision serves to establish a minimum standard of testimonial competency for witnesses. It is designed to empower the trial judge to exclude the testimony of a witness who is so mentally incapacitated or so mentally immature that no testimony of probative worth could be expected from the witness. It should be applied grudgingly, only against the "incapable" witness and never against the "incredible" witness, since the triers of fact are particularly adept at judging credibility.

Commentary to KRE 601, Evidence Rules Study Committee, Final Draft (1989).

■ KRE 601 recognizes a presumption of competency and permits disqualification of a witness only upon proof of incompetency. L.B. was thirteen years old when she testified at Appellant's trial. The trial judge interviewed her on the record in open court three days before trial and entered a written order finding that she was competent to testify. Her testimony at trial was lucid and unemotional. Though she could not recollect all of the specific details surrounding her abuse by Appellant, that affected only the credibility of her testimony, not her competency to testify. *Cf. Hendricks v. Commonwealth,* Ky., 550 S.W.2d 551 (1977).

## V. EXCLUSION OF DEFENDANT FROM COURTROOM.

During L.B.'s testimony, Appellant was excluded from the courtroom and required to view the proceedings on a monitor in an anteroom, where he could not be in constant audio contact with his attorney. He was given a legal pad and a pen with which to make notes, and was advised that if he wished to consult directly with his attorney he should notify the bailiff who would notify the judge who would stop the trial and permit Appellant's attorney to leave the courtroom in order to consult with him in the anteroom. This procedure was purportedly employed pursuant to KRS 421.350(2), which provides:

The court may, on the motion of the attorney for any party *and upon a finding of compelling need,* order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and the finder of fact in the proceeding. Only the attorneys for the defendant and for the state, persons necessary to operate the equipment, and any person whose presence the court finds would contribute to the welfare and well-being of the child may be present in the room with the child during his testimony. Only the attorneys may question the child. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the child during his testimony, but does not permit the child to see or hear them. The court shall permit the defendant to observe and hear the testimony of the child in person, but shall ensure that the child cannot hear or see the defendant. (Emphasis added.)

The emphasized language was added by the 1996 General Assembly, apparently in response to case law discussed *infra.* 1996 Ky.Acts ch. 178 § 1. The statutory provision that the child testify from outside the courtroom and that the defendant remain in the courtroom protects the defendant's right to be present "at every critical stage of the trial." RCr 8.28. This right is protected not only by RCr 8.28, but also by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Section 11 of the Constitution of Kentucky. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970) ("[o]ne of the most basic rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial"); *Snyder v. Massachusetts,* 291 U.S. 97, 107–08, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934), *overruled on other grounds, Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), ("the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence"); *Carver v. Commonwealth,* Ky., 256 S.W.2d 375, 377 (1953) ("[t]his court has long recognized the importance of the constitutional right of the accused to be present with his counsel at all stages of a trial").

The bill of rights declares "That in all criminal prosecutions the accused hath the right to be heard by himself and counsel." The right ... necessarily embraces the right to be present himself ... at every step in the progress of the trial, and to deprive him of this right is a violation of that provision of the fundamental law just quoted.

The presence of the accused is not a mere form. It is of the very essence of a criminal trial not only that the accused shall be brought face to face with the witnesses against him, but also with his triers. He has a right to be present not only that he may see that nothing is done or omitted which tends to his prejudice, but to have the benefit of whatever influence his presence may exert in his favor.

*Temple v. Commonwealth,* 77 Ky. (14 Bush) 769, 770–71 (1879).

In *Commonwealth v. Willis,* Ky., 716 S.W.2d 224 (1986), we held that KRS

421.350(2) [then (3) ] did not violate a defendant's constitutional right to confront the witnesses against him, U.S. Const. amend. VI, Ky. Const. § 11, *provided that:* (1) the Commonwealth prove that the use of this procedure is reasonably necessary to obtain the testimony of the child (in *Willis,* the child refused to testify in the presence of the defendant); and (2) the Commonwealth provide the technical details whereby (a) the testimony will be taken with the child screened from the sight and hearing of the defendant while, at the same time, (b) the defendant can view and hear the child *and maintain continuous audio contact with his defense counsel. Id.* at 227, 231, and at 232 (Leibson, J., concurring). The concurring opinion (three justices) noted that the use of the statutory procedure was conditioned *inter alia* upon "technology [being] available and utilized so that any impairment of the rights of the accused to confront the witness is technical and insubstantial." *Id.* at 232 (Leibson, J., concurring). Appellant also claims that the denial of continuous audio contact with his counsel violated his Sixth Amendment right to effective assistance of counsel.

In *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the United States Supreme Court considered whether a Maryland statute with similar provisions violated the Confrontation Clause of the Sixth Amendment. However, that statute contained a specific requirement that the defendant remain in electronic communication with his counsel during the proceeding. *Id.* at 842, 110 S.Ct. at 3161; Md.Code Ann., Cts. & Jud. Proc. § 9–102(b)(3). Thus, the Court was required to focus only upon the issue of necessity sufficient to justify the impairment of a defendant's confrontation rights.

> The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify.... The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.... Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than "mere nervousness or excitement or some reluctance to testify."

*Maryland v. Craig, supra,* at 855–56, 110 S.Ct. at 3169 (citations omitted).

In *George v. Commonwealth,* Ky., 885 S.W.2d 938 (1994), the issue was whether the statute applied to a child *witness* who was not a child *victim.* We held that the version of the statute in effect at that time did not,[5] but noted that even if it did, the Commonwealth had not shown a compelling need to justify utilization of the procedure. The only evidence on this issue was the testimony of a social worker that the child witness could testify in the presence of her father, the defendant, but that she would be more traumatized than the average child by doing so.

> It is apparent that the trial court failed to use the standard of a "compelling need" which is necessary to use TV testimony as the alternative to obtaining

---

**5.** The statute was subsequently amended to extend its application to all child witnesses of sexual abuse. 1996 Ky.Acts ch. 178 § 1.

truthful testimony from the child. The Kentucky statute does not provide a blanket process for taking the testimony of every child witness by TV simply because testifying may be stressful.

*Id.* at 941.

Three errors occurred with respect to the application of KRS 421.350(2) in this case:

 (1) Appellant was excluded from the courtroom whereas the statute provides that the defendant will remain in the courtroom and the child witness will testify from another room. We would not have reversed this case on this issue alone, since the defendant, though technically absent during a critical stage of the trial, was able to view the courtroom proceedings by video monitor. Nevertheless, the statute creates a narrow exception to a constitutional right, thus, its provisions should be scrupulously followed.

(2) Appellant was not in continuous audio contact with his defense counsel. No argument is made that the technology to accomplish this purpose is unavailable. If that argument were made, the response would have to be that the statutory procedure is unavailable until and unless the technology is available. (Apparently, it is available in Maryland. *Maryland v. Craig, supra,* at 842, 110 S.Ct. at 3161.)

(3) No hearing was held nor finding made with respect to whether there was a compelling need to employ the procedure in this particular case. The record does not contain a motion by the Commonwealth to permit L.B. to testify outside the presence of Appellant. The procedure described in KRS 421.350(2) may not be utilized absent proof and a specific finding of a compelling need therefor.

 Noncompliance with these requirements in this case requires the conclusion that L.B.'s testimony violated Appellant's constitutional right of confrontation and his right to be present at every critical stage of his trial. However, L.B.'s testimony pertained only to the charge of attempted rape. She gave no testimony pertaining to the murder charge other than that she saw her mother's body on the sofa as she was running out of the house. She did not claim that she saw or heard Appellant kill her mother or that Appellant told her that he had done so. Thus, the erroneous exclusion of Appellant from the courtroom during L.B.'s testimony does not require reversal of Appellant's murder conviction, but only of his conviction of attempted first-degree rape.

Accordingly, the judgment of the Hart Circuit Court is affirmed with respect to Appellant's conviction and sentence for murder, but reversed with respect to his conviction and sentence for attempted first-degree rape; and this case is remanded to the Hart Circuit Court for a new trial on the latter charge.

JOHNSTONE, KELLER and STUMBO, JJ., concur.

GRAVES, J., dissents by separate opinion, with LAMBERT, C.J., and WINTERSHEIMER, J., joining that dissent.

GRAVES, Justice, dissenting.

Respectfully, I dissent.

KRS 421.350 authorizes a procedure to allow the testimony of a child witness to be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom. This procedure was approved in *Commonwealth v. Willis,* Ky., 716 S.W.2d 224 (1986). In *Danner v. Commonwealth,* Ky., 963 S.W.2d 632, 634 (1998), we held that in deciding whether to allow a child victim of illegal sexual activity to testify through closed circuit television or taped video, "the trial court must have a wide discretion to consider the age and demeanor of the child witness, the nature of offense, and the likely impact of testimony in court or facing the defendant." (quoting *Willis, supra.*)

Here, the trial court employed a hybrid of KRS 421.350. In chambers, the trial court stated that L.P. was twelve (12) years old at the time of the incident, and that she would be permitted to testify in front of the jury with Appellant in the judge's chambers, where he could watch and hear the proceedings on the monitor with unlimited access to his attorney. This method was favorable to Appellant because the child actually had to testify in front of the jury. Appellant was able to write comments on a legal pad and give notes to his attorney—in other words, he was able to freely consult his attorney. The trial court admonished the jury that the lack of Appellant's presence in the courtroom was mandated by statute and that no inference of guilt should be made. Because of Appellant's multiple crimes against L.P. over a prolonged period of time, there was a compelling need that L.P. not face Appellant. Appellant heard all of the testimony and had unlimited consultation with his attorney for the purpose of cross-examination. Appellant fully cross-examined L.P. and was not denied his right of confrontation. Under the totality of these circumstances, there was no abuse of discretion in using a hybrid method which protected Appellant's constitutional rights.

I would affirm the trial court's judgment of conviction for rape.

LAMBERT, C.J., and WINTERSHEIMER, J., join in this dissent.