# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 23, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0548-MR

MACH SAR                                                    APPELLANT

V.

ON APPEAL FROM WARREN CIRCUIT COURT
HONORABLE JOHN R. GRISE, JUDGE
NO. 20-CR-00409

COMMONWEALTH OF KENTUCKY                            APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

After a three-day trial, a Warren County Circuit Court jury found Mach Sar guilty of murder for stabbing Sam Phan twenty-seven times. The trial court sentenced Sar to forty-five years in prison in accordance with the jury's recommendation. Sar raises two evidentiary issues on appeal. After careful review, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

In January 2020, Mach Sar and his fiancée, Stephanie Harris, moved from Elkhart, Indiana to Bowling Green, Kentucky after learning of a possible job opportunity. Sar, Harris, and their four children moved in with Sar's sister and her boyfriend but after Sar threatened his sister on their first night in the home, his sister threw them out. Sar and Harris packed up their children and

moved into a two-bedroom trailer with his brother, Rackney "Ricky" Sean. Sean lived in the trailer with his wife, Catherine, their two children, his niece, his nephew, and Sar and Sean's father. Sean and Catherine had a close friend, Somrhut "Sam" Phan, who they considered family and stayed with them often.

Sean testified that Sar seemed stressed about finances. The day before Phan died, Harris and Sar went to the store and their debit card was rejected. Sar was upset because his last paycheck from his employment in Indiana had not been deposited. In the late evening hours of January 29 or early morning hours of January 30, 2020, Sean returned home from work. The kids were asleep and most of the adults were still awake. Sean played video games for a few hours then watched some television. Both Sar and Phan were still up when Sean went to bed around 4:00 a.m. About thirty minutes later, Sean woke up to his wife Catherine screaming.

Sean ran into the kitchen and saw Sar holding a long kitchen knife and standing over Phan's body. He then went to Phan to see if he could assist him. Sean heard Sar saying that Phan was trying to steal Sar's money and that Phan tried to take a picture of Sar's bank card. Sean heard Phan say, "it hurts." Sean did not call the police immediately. Instead, he led Catherine back into their bedroom and found some pants and his phone. When he came back out of the bedroom, Sar, Harris, and their four children were exiting the trailer. Sean called 911 and continued to try to help Phan.

Harris, Sar's fiancée, also testified at trial and said that after Sean went to bed Sar and Phan were picking on each other like brothers might do. At one

2

point, Phan told Sar "you think you're so smooth," and Sar said something in response but Harris could not determine what he said. Sar went to the kitchen and returned with a knife. Harris testified that at that point, Sar did not seem like himself. She described him as robotic and stated that he moved in a trance like a zombie. Harris saw Sar stab Phan multiple times. She unsuccessfully tried to pull Sar away from Phan when Sar said, "let's go." They grabbed their children, exited the trailer, and drove away. As they were leaving, Harris saw Catherine and heard her scream.

After driving for approximately thirty minutes, Sar, Harris, and the children stopped at a McDonald's and Sar threw away his bloody shirt. During the drive, Harris asked Sar what happened, and he responded that he stabbed Phan over thirty times. Sar also mentioned that Phan had a photo of Sar's bank card, and he was worried that Phan had taken money from him. The next day, the money Sar thought was missing from his last paycheck was deposited onto the bank card.

Catherine, Sean's wife, testified that she was in bed asleep in the early morning hours of January 30, 2020, when she was awoken by yelling in the living room. When she heard a thud, she ran into the kitchen and saw Sar standing over Phan, stabbing him at least twice. She screamed for Sar to stop as she backed into the laundry room. Sean rushed out of the bedroom and saw Phan on the floor. Catherine heard Sar telling Ricky repeatedly that Phan took his money.

3

In addition to her testimony about the stabbing incident, Catherine was also permitted to testify about an earlier conversation she had with Sar. Before the stabbing, Sar and Phan left the trailer and were gone for several days. Sar returned alone and Catherine asked Sar why Phan did not come back with him. According to Catherine, Sar "jokingly said that [Phan] felt like he was going to kill him, so he stayed wherever he was." Catherine asked Sar why he would say that, and Sar said, "he did not know" and "shrugged it off." Catherine continued: "And then not even twenty-four hours after the fact, he literally killed him in my home."

Phan died on the scene before officers arrived. According to the medical examiner, of the twenty-seven stab wounds only one was deemed fatal—a stab wound in the torso that penetrated through Phan's ribs and lower portion of the right lung. Officer Ben Craig of the Bowling Green Police Department was the first to arrive at the scene. Officer Tyler Norris arrived a few seconds after Officer Craig. Officer Norris noticed a pool of blood above Phan's head had started clotting, which indicated that some time had passed since he was stabbed. Officers Craig and Norris moved Sam a few feet to give them room to provide medical aid. Portions of both Officers' body camera footage was played for the jury. Additionally, the lead investigator in the case, Detective Michael Nade, testified that during his interview, Sar mentioned trying to stop a masked man who actually killed Phan. But Detective Nade found no evidence for another suspect besides Sar.

As the Commonwealth introduced photos of inside the trailer, defense counsel objected to admitting closeup photos of Phan's face, arguing the photos were repetitive of the body camera footage. The Commonwealth agreed not to admit those photos. Sar also objected to a five-second portion of Officer Norris's walk-through body camera footage that showed a closeup view of Phan's face and upper torso. The trial court overruled the objection, concluding it was important for the jury to understand the positioning of the people during the incident, especially Sar and Phan, and the layout of the trailer.

The jury found Sar guilty of murder and recommended a sentence of forty-five years.[1] The trial court followed the jury's recommendation. Sar now appeals as a matter of right. KY. CONST. § 110(2)(b).

## ANALYSIS

### I. The trial court did not err in denying Sar's motion to exclude a five-second clip contained in police body camera footage.

During the police investigation, Office Tyler Norris performed a video walk-through of Sean and Catherine's trailer. This video contained a five-second clip of a close-up of Phan's face and upper torso. The Commonwealth moved to introduce Norris's walk-through video, explaining that it would help put the crime scene photos in context and give the jury a better sense of the space. Defense counsel responded that they did not have an issue with the

---

[1] Sar was also charged with tampering with physical evidence for disposing his bloody clothing at McDonald's. The trial court granted a directed verdict on that charge because there was no evidence that the disposal occurred in Warren County, Kentucky.

5

video in general but objected to the five-second clip of Phan's face and torso, arguing that it was repetitive. The Commonwealth highlighted the fact that the clip in question was only five seconds of a six-minute video and that the jury would not be shocked by the clip since they were already aware of the nature of Phan's injuries from previous testimony.

The trial court overruled Sar's objection, determining that it was important for the jury to understand the "relative positioning of the people, especially the defendant and the victim in this case." On appeal, Sar argues that it was error to allow the jury to see this five-second clip and that the trial court should have ordered the Commonwealth to redact that five-second clip from the rest of the video.

Generally, graphic or gruesome photos are admissible. *Hall v. Commonwealth,* 468 S.W.3d 814, 822 (Ky. 2015). However, this general rule of admissibility "'loses considerable force when the condition of the body has been materially altered by mutilation, autopsy, decomposition or other extraneous causes, not related to the commission of the crime. . . .'" *Id.* at 823 (citation omitted). These images are still subject to the balancing test of Kentucky Rule of Evidence (KRE) 403, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

6

There are three fact-intensive inquiries that a trial court must undertake when determining whether evidence is admissible under KRE 403. *Hall,* 468 S.W.3d at 823. The trial court must: (1) address the probative value of the evidence; (2) assess the probability that the evidence will cause undue prejudice; and (3) determine whether the probative value is substantially outweighed by the undue prejudice. *Id.* We review a trial court's evidentiary determination for an abuse of discretion, *Benjamin v. Commonwealth,* 266 S.W.3d 775, 791 (Ky. 2008), reversing a trial court's determination if it is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999) (citations omitted).

As the trial court explained, the video displayed the crime scene and provided a more in-depth understanding of the layout of the trailer, allowing the jury to mentally place Sar and Phan in appropriate positions as the incident was described to them. Clearly, Phan's appearance had likely not been transformed by autopsy or decomposition, given that the video was taken shortly after the crime. While the trailer and crime scene were depicted by the admitted photographs, the video served an alternative, and probative, purpose.

Further, any prejudicial effect of the five-second clip is an obvious result of the nature of the crime itself. We must determine whether that prejudice was "unnecessary and unreasonable." *Price v. Commonwealth,* 31 S.W.3d 885, 888 (Ky. 2000). Sar argues that the five-second clip was unnecessary because the Commonwealth already introduced twenty-five photos of the scene into

7

evidence. Also, the Commonwealth already introduced body camera footage from Office Craig's walk-through of the scene.

At trial, the Commonwealth produced a significant amount of evidence demonstrating that Sar repeatedly stabbed Phan, including twenty-five photos of the crime scene. But there was only one photo admitted that depicted Phan's head, so the video clip in question was only duplicative of one photo. Five seconds of one six-minute video is not unduly duplicative of one photo out of twenty-five photos. Additionally, the footage from Officer Craig's body camera depicted the scene before Phan was moved to render aid. The footage from Officer Norris's body camera contributed to providing a complete understanding of what the officers saw upon arriving at the scene, attempting to render aid to Phan, and assessing how to proceed with an investigation and pursuit of the perpetrator. The perception of the crime scene gleaned from a video is more comprehensive than any isolated photo. As a result, we cannot say that the probative value was outweighed by any undue prejudice. *Hall,* 468 S.W.3d at 823.

Recently, in *Sutton v. Commonwealth,* 627 S.W.3d 836, 854 (Ky. 2021), the defendant sought to exclude a five-minute video of body camera footage from admission at trial. The video was recorded by the first officer to arrive on the scene of the crime, and half of the video showed the officer applying first aid to the gunshot victim. *Id.* This Court reasoned that "[a] crime scene video is admissible even if gruesome, and may represent a more accurate depiction of the scene than testimony alone." *Id.* at 855 (citations omitted).

8

In *Sutton,* the Court cited *Hall,* 468 S.W.3d at 820, a case in which the Commonwealth introduced a ten-minute video depicting the crime scene and forty-three crime scene and autopsy photos, twenty-eight of which were admitted over the defendant's objection. The Court concluded that the twenty-eight photos admitted over the defendant's objection were needlessly cumulative when considering the danger of inflaming the jury. *Id.* at 826. The Court described *Hall* as "the rare instance of an abuse of the trial court's discretion under Rule 403 in admitting gruesome photographs." *Id.* at 827. Sar's case is readily distinguishable from *Hall* from a sheer volume standpoint—twenty-eight disputed photos in *Hall* versus one five-second video clip here. Further, the jury was not shown endless, repetitive images of victim's body like the jury was shown in *Hall. Id.* at 826.

As with any depiction of a recently deceased person, the five-second clip is gruesome. However, the jurors were already aware of the gruesome nature of the crime and Phan's injuries from previous testimony. In addition to emotional testimony by Catherine and Harris describing how they watched Sar stab Phan repeatedly, the jury heard Sean weeping over Phan's body and begging for help during the 911 call. Here, like in *Sutton,* the video provided more detail about the layout of the trailer, where the altercation occurred, and the position of the victim relative to the other individuals present during and after the crime occurred. Even though the officers moved Phan to render first aid, as indicated by marks on the floor, and Sar was not present when police arrived, the visual video representation allowed jurors to better visualize the

9

incident while considering the trial testimony. The video gave the jurors a better sense of the space than the photos alone could provide.

Sar also argues that the Commonwealth should have produced an alternative to the five-second clip. "When ruling on the admissibility of a gruesome photograph, the trial court should consider whether evidentiary alternatives would sufficiently prove the fact at issue without a comparable risk of prejudice." *Ratliff v. Commonwealth,* 194 S.W.3d 258, 271 (Ky. 2006) (citations omitted). But evidence "must be **highly inflammatory and prejudicial** to compel a party to employ evidentiary alternatives." *Id.* (Emphasis added). In light of our conclusion that the five-second clip was not highly inflammatory, the trial court did not err in failing to consider evidentiary alternatives. Sar also argues that the trial court did not conduct a proper KRE 403 analysis. However, in reviewing the trial court's ruling, we believe the trial court conducted the proper analysis based on the parties' arguments and properly considered probative value, undue prejudice, and appropriately weighed the two considerations.

In sum, we cannot conclude that the trial court abused its discretion in admitting the five-second clip showing Phan's face and upper torso. Sar emphasizes that the five-second clip amounts to only 1.4% of the video in question, and 150-600 of 10,800-43,200 frames if the video were converted to still images, so he only requested that a minute fraction of the video be excluded. The miniscule quality of the clip only underscores our determination that the five-second clip could not have been unduly prejudicial. It certainly

10

did not constitute the same volume and quality of photos that this Court disapproved of in *Hall.* 468 S.W.3d at 827. Even if this Court were to find that the five-second clip was erroneously admitted, it was unquestionably harmless in light of the other evidence. In reviewing a non-constitutional evidentiary error, if the reviewing court "can say with fair assurance that the judgment was not substantially swayed by the error," then it can be deemed harmless. *Winstead v. Commonwealth,* 283 S.W.3d 678, 689 (Ky. 2009). There is simply no substantial possibility that the jury was swayed by the five-second glimpse of Phan's head and upper torso.

## II. The trial court did not err in overruling Sar's objection to Catherine's testimony.

Sar also argues reversal is required given Catherine's testimony that Sar allegedly joked less than twenty-four hours before the stabbing that Phan felt like Sar was going to kill him. The Commonwealth responds that the error is unpreserved. We disagree.

An objection as to the admission of evidence is preserved only if "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." KRE 103(a)(1); *see also* Rule of Criminal Procedure 9.22. Here, the Commonwealth asked Catherine if there had been any problems between Sar and Phan in the days before the stabbing. Catherine answered that she was asleep when the stabbing began and therefore did not know what happened immediately beforehand. She then began to recount an incident less than twenty-four hours before the shooting in which she asked Sar where Phan was after Sar

11

returned from an extended absence without him.  She testified that Sar responded with a joking statement, at which point her testimony was interrupted by a defense objection.

A bench conference followed, and defense counsel contended Catherine's answer was not responsive to the Commonwealth's question and the defense did not know what was going to be said.  The Commonwealth stated Catherine was going to testify to a joking reference by Sar to killing Phan.  The trial court ruled that the answer was responsive to the Commonwealth's question and testimony resumed with Catherine telling the jury Sar had made such a statement.

We conclude, based on the context of that objection, that this claim of error as to admission of the testimony is preserved.  At the bench conference defense counsel expressed concern they did not know what Catherine was going to say.  The pending question asked Catherine to identify issues between Sar and Phan shortly before the crime, and in response Catherine had begun to relate a story regarding Sar's brief absence from the trailer with Phan followed by Sar's return without him.  This context makes evident that one reason for defense counsel's concern about the testimony was that it might include irrelevant matters occurring before the crime itself.  Though the objection certainly could have been stated more plainly, we nonetheless conclude based on the context that it was sufficient to preserve the claim of error on grounds of relevance.

12

As to the merits, Sar argues Catherine's testimony regarding the allegedly joking statement was irrelevant because Sar's state of mind was not at issue at trial. Sar contends the statement was also irrelevant because it related not to Sar's state of mind but rather only to Sar's speculation regarding Phan's state of mind. Sar also maintains the statement was highly prejudicial because it portrayed him as someone who jokes about killing. Finally, Sar asserts the statement caused the jury to reject his extreme emotional disturbance (EED) defense and thus requires reversal.

KRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 402 provides that while relevant evidence is admissible, irrelevant evidence is not. And as noted above, KRE 403 permits the trial court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of undue prejudice." We review a trial court's application of these Rules for abuse of discretion. *Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky. 2001). We therefore find error only if the trial court's ruling was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English*, 993 S.W.2d at 945.

Here, we find no such error. First, Catherine's testimony was relevant to the core disputed issue in the case, Sar's state of mind at the time of the stabbing. The Commonwealth contended at trial that Sar intentionally killed Phan and that he did not do so under EED. Sar asserted in contrast that he

13

killed Phan under EED arising from a mistaken belief that Phan had stolen money from him. Thus a central issue in the case was whether the killing occurred under EED.

Catherine's testimony that Sar made a passing and seemingly joking reference to killing Phan in the twenty-four hours before the crime occurred bore materially on whether Sar killed Phan under EED. EED is defined as "'a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes.'" *Hargroves v. Commonwealth,* 615 S.W.3d 1, 7 (Ky. 2021) (quoting *McClellan v. Commonwealth,* 715 S.W.2d 464, 468-69 (Ky. 1986)). An EED defense is applicable only where the occurrence giving rise to the defendant's conduct was "so dramatic as to render the mind temporarily uncontrollable and provoke 'an explosion of violence.'" *Id.* (quoting *Luna v. Commonwealth,* 460 S.W.3d 851, 883 (Ky. 2015)). Though the "triggering event does not have to immediately precede a criminal act, it must be sudden and uninterrupted." *Posey v. Commonwealth,* 595 S.W.3d 81, 85 (Ky. 2019).

Here, Catherine testified Sar made a brief and seemingly joking passing reference to killing the victim hours before he actually did so. This suggested killing Phan was already on Sar's mind hours before the stabbing. The joking nature of the statement also suggested that Sar contemplated killing Phan during a period of mental calm rather than in an uncontrollable explosion of violence. These facts thus made it less probable that Sar acted in response to

14

a sudden and uninterrupted triggering event, *i.e.* that he acted under EED. Indeed, as Sar himself explicitly notes in his briefing, the "statements led the jury to reject the EED defense." Catherine's testimony was therefore directly relevant to a central issue in the case.

Second, prejudice resulting from the testimony did not substantially outweigh its probative value. The testimony was certainly prejudicial given that it depicted Sar making a seemingly joking reference to a killing he would commit less than twenty-four hours later. However, it was also significantly probative of a central issue in the case, whether Sar killed Phan under EED. As such, we do not find that the testimony warrants reversal.

## CONCLUSION

For the foregoing reasons, we hereby affirm the judgment of the Warren Circuit Court.

All sitting. All concur.

15

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny Lynn Sanders
Assistant Attorney General