# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  APRIL 24, 2025
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2023-SC-0158-MR

JUSTIN WISCHER                                                          APPELLANT

V.
ON APPEAL FROM CAMPBELL CIRCUIT COURT
HONORABLE JULIE REINHARDT WARD, JUDGE
NO. 21-CR-00659

COMMONWEALTH OF KENTUCKY                                   APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**REVERSING AND REMANDING**

A Campbell County jury convicted Justin Wischer of first-degree rape, victim under twelve years of age.  He received a sentence of twenty years' imprisonment and appeals to this Court as a matter of right.[1]  Because the Commonwealth improperly commented on Wischer's consultations with legal counsel, we must reverse and remand for a new trial.

**FACTS AND PROCEDURAL HISTORY**

Teresa Wischer[2] lives in Newport, Kentucky, with her 11-year-old granddaughter, K.C,[3] and other relatives.  Wischer is K.C.'s uncle and Teresa's

---

[1] KY. CONST. § 110(2)(b).

[2] For clarity, we will refer to Ms. Wischer by her first name.

[3] We use initials to protect the minor victim's privacy.  Kentucky Rules of Appellate Procedure (RAP) 45.

nephew. He was treated as a member of Teresa's immediate family and was a frequent visitor to Teresa's home.

On September 23, 2021, K.C. was playing video games at a desk in the living room of Teresa's house while Wischer was lying on the couch. At some point, Wischer got up and began to tickle K.C.'s side before moving his hand onto her thighs. He tickled her near her vagina and made a scooping motion over the outside of her underwear. K.C. told him she was not ticklish there, and Wischer returned to the couch while K.C. remained in her chair.

About two minutes later, Wischer asked K.C. how many people were in the house and pulled K.C.'s blanket which made her chair roll toward the couch. When K.C. got up to retrieve her blanket, Wischer grabbed her and pulled her onto the couch. He began tickling her again, moving from her side to her thighs. K.C. attempted to close her thighs, but Wischer was able to move her underwear to the side and touched all around her vagina. K.C. froze after she could not loosen Wischer's grip or pull his hand away. At that point, Wischer touched her left breast and inserted two fingers in her vagina.

Following the incident, K.C. called Teresa, who was at a concert, and told her what had happened. The next morning, Teresa contacted police who responded to take Teresa's statement and collect evidence. At some point, Teresa confronted Wischer by text message and did not receive any response. Wischer also abruptly cut off contact with other family members. K.C. was subsequently interviewed at a Child Advocacy Center (CAC). Based on the information provided at the CAC interview, Wischer was arrested.

2

On November 18, 2021, Wischer was indicted on a single count of first-degree rape, victim under 12 years of age. At the conclusion of proof, the jury initially deadlocked and received an *Allen* charge.[4] After continued deliberations, the jury returned a guilty verdict and recommended a sentence of twenty years' imprisonment. The trial court entered a final judgment of conviction and sentence in accordance with the jury's verdict and recommendation. This appeal followed. Additional facts will be developed as necessary.

## LAW AND ANALYSIS

Wischer first argues the Commonwealth improperly commented on his consultations with legal counsel. He concedes this alleged error is unpreserved and requests palpable error review.

RCr 10.26 authorizes an appellate court to review an unpreserved error as follows:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

A palpable error is "easily perceptible, plain, obvious, and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). To demonstrate manifest injustice, a party must show the "probability of a

---

[4] An *Allen* charge is an instruction which directs a jury to continue its deliberations after it has deadlocked. *Allen v. United States*, 164 U.S 492 (1896). The Kentucky form of the *Allen* charge is set forth in Kentucky Rules of Criminal Procedure (RCr) 9.54. Dorislee Gilbert, *Trial Handbook for Ky. Law.* § 40:17 (2025 ed.).

different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006). In other words, a palpable error occurs where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

At trial, the overarching theme of the Commonwealth's case was the venerable adage that actions speak louder than words. To this end, the Commonwealth elicited testimony from Detective Jason Gabbard that Wischer called two different criminal defense attorneys, who were identified as such by name[5], on five occasions after Teresa made the allegations known to the family. With this evidence as a predicate, the Commonwealth cross-examined Wischer regarding his motives for seeking counsel:

> And the second that phone call ended you picked up Grandma's [Elizabeth Wayson, Wischer's grandmother] phone and called defense attorney [name omitted] and talked to him for 24 minutes, is that right? 11:32, 10-minute phone call. 11:42, 24-minute phone call. So, you're listening to Grandma talk to Teresa, you find out what's going on, the moment that call ends you're on the phone with [defense attorney, name omitted] for 24 minutes, right?

Additionally, during cross-examination, the prosecutor implied that Wischer used his pre-trial meetings with counsel to fabricate a story.

> **Com.**: Let's just put this out there. You've had 447 days between September 23rd and now to know what you would say, is that correct?
>
> **Wischer**: I know the truth, sir.
>
> . . .

---

[5] The referenced attorneys did not represent Wischer at trial.

4

**Com.**: Well, answer me this. Have you thought about this every single day since then?

**Wischer**: Not every day.

**Com.**: Have you met with your attorneys many times?

**Wischer**: Yeah.

**Com.**: Have you discussed this with your family members many times?

**Defense counsel**: Objection.

**Trial Court**: Just, he wasn't going to go any further. He met with them. Are you objecting to that or are you objecting because you thought the next question was going to say something different?

**Defense counsel**: The discussion is what I'm objecting to.

**Trial Court**: So, you [Commonwealth] didn't ask about, I think. . .

**Com.**: I didn't ask about the content.

**Trial Court**: It looked like you were going to go there, but you didn't. You asked something different.

**Com.**: [To Wischer] You have discussed this case with your attorney many times, correct?

**Defense counsel**: Objection.

**Trial Court**: I'm just going to sustain. You [Wischer] don't have to answer about [trails off]. You [Commonwealth] can say he met with them. He answered that.

The prosecutor's references to Wischer's consultations with legal counsel

culminated in the following closing argument:

And you can see the panic right? Call to Dad. Call to Dad. Defense attorney. Dad. Defense Attorney. Dad. Defense Attorney. Dad. **That's not the activity of an innocent person. That's the activity of someone starting to build a defense.** Because he already knows what the allegations are going to be because he was present when it happened. Because he did it.

5

**He's telling you he's guilty without telling you he's guilty.** All you have to do is listen.

(Emphases added).

"A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident giving rise to a criminal indictment, implies guilt." *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990). "[T]he vast majority of . . . federal and state courts" apply this rule. *State v. Angel T.*, 973 A.2d 1207, 1218 (Conn. 2009). There is a split of authority, however, on the specific constitutional basis of the prohibition, with numerous courts focusing on the right to counsel under the Fifth or Sixth Amendments while other courts utilize a due process analysis under the Fourteenth Amendment. *Id.* at 1219-20 (collecting cases). The difference in the various approaches stems from the apparent incongruity of enforcing the Fifth or Sixth Amendment right to counsel before those rights have technically attached. *Id.* at 1221 ("Indeed, the sixth amendment right to counsel does not attach until the commencement of adversary judicial proceedings . . . and the separate and distinct fifth amendment right to counsel is limited to custodial interrogations by government agents . . . .").

In *Price v. Commonwealth*, 31 S.W.3d 885, 891 (Ky. 2000), this Court examined the prejudicial effect of informing the jury that a defendant had invoked his right to counsel relative to the dictates of *Miranda v. Arizona*, 384 U.S. 436 (1966), which is rooted in the Fifth Amendment privilege against self-

6

incrimination.[6]  In the present matter, we need not delve further into the debate whether the prohibition on the drawing of adverse inferences from a pre-arrest consultation with counsel is properly based on the Fifth, Sixth, or Fourteenth Amendments because, notably, the Commonwealth has not attempted to defend the prosecutor's comments on the merits, and instead, relies solely on *Price* to support its contention the improper statements did not rise to the level of palpable error.

Price* is readily distinguishable from the present appeal, however.  In *Price*, the defendant invoked his right to counsel during a recorded police interrogation.  31 S.W.3d at 891.  When the recording was played for the jury at trial, the parties agreed the tape would be stopped just prior to the defendant's request.  *Id.*  However, the jurors were inadvertently provided with an unredacted transcript of the interview.  *Id.*  At this point, the parties agreed to play the entire recording to the jury.  *Id.*

On appeal, we appeared to presume error but further observed such improper commentary on the right to counsel "is more susceptible to harmless error analysis than is a comment on silence" because "even an innocent person is likely to want to consult an attorney if accused of a crime which he did not commit."  *Id.*  Ultimately, we concluded the error was, in fact, harmless because "by the time [the defendant] invoked his right to counsel, he had

---

[6] *See also Brewer v. Williams*, 430 U.S. 387, 397 (1977) (observing the *Miranda* doctrine is "designed to secure the constitutional privilege against compulsory self-incrimination[.]").

7

already admitted that he had shot his wife and sexually assaulted his stepdaughter." *Id.*

In the present matter, unlike *Price*, the prosecutor directly invited the jury to accept the evidence of Wischer's consultations with a defense attorney as probative evidence of guilt. Thus, the Commonwealth's present contention that the jury could just as easily have inferred an innocent person would have contacted an attorney in such circumstances is wholly unpersuasive. Neither can we accept the Commonwealth's characterization of the improper comments as merely fleeting. On the contrary, the prosecutor deliberately emphasized Wischer's meetings with counsel during its case-in-chief, cross-examination, and closing argument.

Moreover, the prejudicial impact of the constitutional error in *Price* was analyzed against the overwhelming evidence of a valid confession. By contrast, in the present matter, credibility was at the forefront because Wischer denied the allegations and no physical evidence was produced at trial. Additionally, the strength of the Commonwealth's evidence was such the jury initially deadlocked and received an *Allen* charge.

The present appeal more closely resembles *United States ex. rel. Macon v. Yeager*, 476 F.2d 613 (3rd Cir. 1973). In *Yeager*, the defendant was involved in a violent altercation and claimed self-defense. *Id.* at 614. At trial, the defendant testified concerning his activities following the incident and admitted to calling his attorney before he was arrested. *Id.* During closing argument, the prosecutor implied the defendant's act of calling his attorney was

8

inconsistent with a claim of innocence. *Id.* The defendant did not object to the prosecutor's statement or request any other relief. *Id.*

On appeal, the Third Circuit held the prosecutor's statement amounted to plain error necessitating reversal and explained:

> The prosecutor's comment concerning [the defendant's] consultation with counsel the day after the shooting incident would appear to have been directed to, and may have had the effect of, raising in the jurors' minds the inference that petitioner was, or at least believed himself to be, guilty. Such an inference might certainly tend to cause the jury to disbelieve [the defendant's] version of the story. Under these circumstances, the possibility of prejudicial impact is present and we, therefore, are unable to conclude that the prosecutor's comment was "*harmless beyond a reasonable doubt.*"

*Id.* at 616-17 (footnote omitted). The reasoning of *Yeager* applies with equal force to the present appeal.

Similarly, in *Zemina v. Solem,* 438 F.Supp. 455, 465 (S.D. 1977),[7] a prosecutor's statement that the defendant's call to his attorney following a violent altercation was a "telling sign" of guilt necessitated reversal despite the lack of a contemporaneous objection. The federal court explained a prosecutor's

> comment on a defendant's exercise of his right to counsel could make that exercise costly, especially where it was never explained to the jury that the defendant had such a right, and a cautionary instruction that no inference of guilt should be drawn from exercise of that right was not given. The prosecution should not be allowed to imply that only guilty people contact their attorneys.

---

[7] The Eighth Circuit adopted the reasoning of the district court as its own in a summary *per curiam* opinion affirming the grant of habeas corpus relief. *Zemina v. Solem,* 573 F.2d 1027, 1028 (8th Cir. 1978).

9

*Id.* at 466.

We remain mindful "the threshold of palpable error must be very high" and indeed, such an error "should be so egregious that it jumps off the page" and "cries out for relief." *Alford v. Commonwealth*, 338 S.W.3d 240, 251 (Ky. 2011) (Cunningham, J., concurring). It is axiomatic, however, that "[t]he right to counsel is so basic to all other rights that it must be accorded very careful treatment." *United States v. McDonald*, 620 F.2d 559, 564 (5th Cir. 1980). Indeed, the fundamental importance of legal counsel is such that "[o]bvious and insidious attacks on the exercise of this constitutional right are antithetical to the concept of a fair trial[.]" *Id.*

Here, the Commonwealth explicitly equated Wischer's attempts to obtain legal counsel with evidence of guilt. The weaponization of an accused's consultation with an attorney such as occurred in the present case easily satisfies the demanding standard for palpable error and cannot be condoned or disregarded. Specifically, we perceive this error to be "so fundamental as to threaten [Wischer's] entitlement to due process of law." *Martin*, 207 S.W.3d at 3. Moreover, considering the forceful condemnation of similar tactics by federal and state courts alike, we conclude such improper commentary is jurisprudentially intolerable and, thus, constitutes palpable error. *See Yeager*, 476 F.2d at 616-17; *McDonald*, 620 F.2d at 562; *Zemina*, 620 F.2d at 465; and *Angel T.*, 973 A.2d at 1228. "Well-intended as he may have been, the prosecutor should have known better[,]" and we expect "this case will be

instructive to all." *Alford*, 338 S.W.3d at 251 (Cunningham, J., concurring).

Therefore, we are constrained to reverse and remand for a new trial.

Our holding relative to the improper commentary on the consultation with counsel disposes of this appeal. Because Wischer's remaining claims of error are largely unpreserved[8], we decline to address them as he will have the opportunity to seek any appropriate relief on retrial should these issues recur. *Ward v. Commonwealth*, 587 S.W.3d 312, 333 (Ky. 2019).

## **CONCLUSION**

For the foregoing reasons, the judgment of the Campbell Circuit Court is reversed and remanded for further proceedings consistent with this opinion.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Nickell and Thompson, JJ., concur. Keller, J., concurs in result only.

COUNSEL FOR APPELLANT:

Paul J. Dickman
Dickman Law Office, P.S.C.


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General

---

[8] We note the parties dispute whether Wischer's claim regarding the use of his silence as evidence of guilt was properly preserved.

11